**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RODERICK LEWIS | : | |
| PLAINTIFF, | : | |
| | : | CIVIL ACTION NO. 3:11cv1451(VLB) |
| | : | |
| v. | : | SEPTEMBER 25, 2012 |
| | : | |
| CITY OF WEST HAVEN | : | |
| CHIEF OF POLICE JOHN KARAJANIS | : | |
| OFFICER SCOTT BLOOM | : | |
| OFFIVER MICHAEL WOLF | : | |
| DEFENDANTS. | : | |

**MEMORANDUM OF DECISION GRANTING DEFENDANTS' [DKT. ##17,23] MOTION TO DISMISS**

The Defendants City of West Haven (the "City") and the Chief of Police John Karajanis ("Karajanis") have moved to dismiss Counts VIII, IX, XIII and XIV of Plaintiff Roderick Lewis's ("Lewis") Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  In Count VIII of the Second Amended Complaint, Lewis alleges that he was deprived of his constitutional rights by Karajanis's failure to train and supervise his subordinate officers who engaged in excessive force and false imprisonment.  In Count IX, Lewis alleges that the City is liable for the negligence of its agents and employees pursuant to Conn. Gen. Stat. §52-557n.  In Count XIII, Lewis alleges that the City was deliberately indifferent to his constitutional rights and in Count XIV he alleges that the City is liable for indemnification pursuant to Conn. Gen. Stat. §7-465.  For the foregoing reasons, the Court grants Defendants' motion to dismiss.

**Background and Factual Allegations**

1

Lewis filed his Second Amended Complaint on January 25, 2012 asserting constitutional violations pursuant to Section 1983, violations of the Connecticut Constitution as well as several state law tort claims against the City, Karajanis, Officer Scott Bloom ("Bloom") and Officer Michael Wolf ("Wolf").  [Dkt. #20,Second Amended Compl.("SAC")].  Lewis states in an introductory section to the Second Amended Complaint that he is suing Karajanis, Bloom and Wolf in their official and individual capacities.  *Id.* at ¶¶5-7.  Lewis has asserted 14 separate counts in the Second Amended Complaint.  Each count contains specific facts and allegations and is directed toward a particular defendant.

On October 7, 2010 at 2:25am, Lewis was walking on Elm Street in West Haven when he encountered Officer Bloom.  *Id.* at ¶¶8-10.  Bloom was the handler of a "police assigned K-9" called "Onyx."  *Id.*  Bloom and Lewis "exchanged verbal remarks at which time Police Officer Bloom attempted to apprehend the Plaintiff."  *Id.* at ¶10.   Lewis alleges he "fell to the ground and turned his stomach into a defenseless position, surrendering to Police Officer Bloom's commands" where he was handcuffed by Bloom with his hands behind his back.  *Id.* at ¶¶11-12.  Lewis further alleges that while "apprehended and in a defenseless position, Onyx, without warning, seized and bit the Plaintiff," and that Onyx continued to "bite, scratch and/or gnarl at Plaintiff's legs."  *Id.* at ¶¶13-14.  Despite "screaming out in extreme pain, Police Officer Bloom did nothing to stop Oynx from continuing to bite, scratch, and/or gnarl" at his legs.  *Id.* at ¶15.   Only after Lewis sustained injuries, "Bloom commanded Onyx to stop biting, scratching, and/or gnarling" and "[s]oon after an ambulance brought the Plaintiff to Milford Hospital

where he received medical treatment for his injuries." *Id.* at ¶¶16-17.  Lewis alleges in Counts I-VI, claims for excessive force and illegal seizure in violation of the Fourth Amendment, violation of Connecticut State Constitution Article First, section 7 and 9, assault, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress against Bloom in connection with the alleged police dog attack.  *Id.* at p. 4-10.

On June 9, 2009, Lewis was a passenger in a vehicle traveling on Main Street in West Haven which was stopped by Wolf.  *Id.* at Count VII, ¶¶8-9.  Wolf ordered Lewis to step out of the vehicle, handcuffed him, and then placed him into a squad car while Wolf searched the stopped vehicle.  *Id.* at Count VII, ¶11. Wolf arrested the driver of the vehicle for possession of narcotics. *Id.* at ¶¶12. Wolf then ordered Lewis out of the squad car and pushed him up against the stopped vehicle.  *Id.* at Count VII, ¶13.  Lewis alleges that he refused to submit to Wolf's "order, at which time Police Officer Wolf grabbed the Plaintiff by the throat and told the Plaintiff that he did not have a choice." *Id.* at Count VII, ¶14.  Lewis alleges that Wolf stood behind him while he was handcuffed and reached down into the backside of his pants and searched his buttocks with his finger(s).  *Id.* at Count VII, ¶15.  Lewis informed Wolf that he was hurting him.  *Id.* at Count VII, ¶16.   Wolf responded by making homosexual comments and saying "you know you like it." *Id.* at Count VII, ¶17.  After searching Lewis's buttocks with his finger(s), Wolf then grabbed Lewis by the throat and stuck the same fingers into his mouth and asked Lewis "how did it taste?"  *Id.* at Count VII, ¶18.  In Counts VII and Counts X-XII, Lewis asserts claims for excessive force and false

imprisonment in violation of the Fourth Amendment, assault, and intentional infliction of emotional distress against Wolf in connection with the alleged cavity search.  *Id.* at p. 10-13,16-18.

In Count VIII, Lewis asserts a Section 1983 claim against Karajanis.   Lewis does not identify whether his Count VIII claim against Karajanis is an individual or official capacity claim or both.  Lewis alleges that he filed a written Citizen Complaint Statement form with the Department of Police Services in the City of West Haven.  *Id.* at Count VIII, ¶158.  Lewis asserts that Karajanis "failed to secure the Plaintiff, unlawfully deprived Plaintiff, or cause the plaintiff to be unlawfully deprived of rights secured to him by the United States Constitution" in a variety of ways.  Lewis alleges that Karajanis "failed or refused to promulgate and enforce appropriate guidelines, regulation, policies, practices or customs" regarding (i) "the arrests of person by police officers of the West Haven Police Department;" (ii) the use of force against persons by police officers of the West Haven Police Department;" (iii) and "the training of Police Officer Bloom and Police Officer Wolf in the performance of their duties and conduct towards persons."  *Id.* at Count VIII, ¶158a-c.   Lewis further asserts that Karajanis "failed or refused to recognize the dangerous and violent propensities of Police Officer Bloom and Police Officer Wolf toward the Plaintiff and to take corrective disciplinary or educational actions regarding such dangerous and violent propensities" and that he "failed or refused to adequately train Police Officer Bloom in the proper use, control and/or command of Onyx."  *Id.* at Count VIII, ¶158d-e.   Lewis further alleges that Karajanis "failed or refused to recognize

4

when he knew or should have known the dangerous and violent propensities of Onyx and to take corrective disciplinary or educational actions regarding such dangerous and violent propensities." *Id.* at Count VIII, ¶158f.  Lastly, Lewis alleges that Karajanis "failed or refused to investigate Police Officer Wolf regarding the Plaintiff's citizen complaint…[that] Wolf performed a cavity/strip search without any probable cause and/or justification and that "he failed or refused to properly enforce appropriate guidelines, regulations, policies, practices, procedures or customs regarding investigating citizen's complaints against West Have Police officers." *Id.* at Count VIII, ¶158, g-h.

In Count XIII, Lewis asserts a Section 1983 claim against the City for "deliberate indifference" in connection with the failure to investigate Lewis's complaint regarding Wolf's improper cavity search. *Id.* at Count XIII, ¶¶20-21. Lewis alleges that the City's "formal complaint policy was flawed and that these flaws created a widespread custom which consistently discouraged, ignored and discarded citizen complaints." *Id.* at Count XIII, ¶22.  Lewis contends that after he filed his complaint, he was harassed and subjected to excessive force by members of the West Haven Police Department "included but not to Police Officer Wolf" and that "West Haven Police Department's custom of discouraging, ignoring and/or discarding Plaintiff's citizen complaint reflects deliberate indifference to Plaintiff's constitutional rights." *Id.* at Count XIII, ¶¶23-24.

In Count IX, Lewis asserts a state law cause of action against the City for negligence pursuant to Conn. Gen. Stat. §52-557n.  *Id.* at Count IX.  Lewis alleges that the City is liable for the negligent acts or omissions of Bloom, Wolf, and

Karajanis.  *Id.* at Count IX, ¶¶162-63.  Lastly in Count XIV, Lewis asserts a claim for indemnification by the City pursuant to Conn. Gen. Stat. §7-465 asserting the City is liable to indemnify Bloom, Wolf and Karajanis.  *Id.* at Count XIV, ¶1.

### Legal Standard

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949-50).  "At the second step, a

court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

<u>Analysis</u>

**I.      Counts VIII and XIII claims – Municipal Liability**

Defendants have moved to dismiss Lewis's Count VIII claim against Karajanis and his Count XIII claim against the City on the basis that the factual allegations fail to state a plausible cause of action under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  The allegations against the City in Count XIII are essentially identical to the allegations against Karajanis in Count VIII and therefore the Court will examine the sufficiency of the pleadings in both Counts together.   Plaintiffs can only sue a municipality under 42 U.S.C. § 1983 for constitutional violations of its employees occurring pursuant to an official policy or custom.  *Monell*, 436 U.S. at 694.  "A Section 1983 suit against a municipal officer in his official capacity is considered a suit against the municipality itself, and therefore the officer may be held liable only if the municipality is liable for an unconstitutional 'policy'  or 'custom' under the principles of *Monell*."  *Oliphant v. Villano*, No.3:09cv862(JBA), 2011 WL 3902741, at *4 n.8 (D. Conn. Sept. 6, 2011) (citations omitted).

The Court notes that "[s]upervisory liability is a concept distinct from municipal liability, and is 'imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates.'" *Odom v. Matteo*, 772 F.Supp.2d 377, 403 (D. Conn. 2011) (quoting *Clay v. Conlee,* 815 F.2d 1164, 1170 (8th Cir.1987)).  "An individual cannot be held liable for damages under § 1983 merely because he held a high position of authority," or was a supervisor.  *Back v. Hastings On Hudson Union Free School Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (internal quotation marks and citations omitted).  Instead, supervisory liability may be established by the following factors articulated in *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995):

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* [1]

Here, the Defendants have only moved to dismiss the claims against Karajanis on the basis that Lewis has failed to state a claim for municipal liability and therefore they appear to be seeking only dismissal of the official capacity claims against Karajanis.  As noted above, Lewis does not specify whether the claims asserted against Karajanis in Count VIII are official or individual capacity claims or both.

---

[1] The Court notes that the recent Supreme Court decision in *Ashcroft v. Iqbal* 129 S. Ct. 1937 (2009) has called into question whether all of the *Colon* factors remain a basis for establishing supervisory liability and that "no clear consensus has emerged among the district courts within this circuit."  *Aguilar v. Immigration and Customs Enforcement Div. of the United States*, No.07CIV8224, 2011 WL 3273160, at *10 (S.D.N.Y. August 1, 2011) (collecting cases).

Construing the claims in Count VIII, it appears they allege both official and individual capacity claims.   Accordingly, since the Defendants have not moved to dismiss the claims on the basis that Lewis has failed to state a claim for supervisory liability under the *Colon* factors, these claims remain extant for summary judgment and trial.

The Court will therefore examine whether the allegations in Counts VIII and XIII fail to state a claim for municipal liability under *Monell* and its progeny. "In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  A municipality may be "held liable if a plaintiff proves the municipality violated a federally protected right through (1) municipal policy, (2) municipal custom or practice, or (3) the decision of a municipal policymaker with final policymaking authority." *Zherka v. DiFiore*, 412 Fed.Appx. 345, 348 (2d Cir. 2011) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658. 695 (1978)).

A plaintiff may "establish municipal liability by showing that a municipal policy or custom existed as a result of the municipality's deliberate indifference to the violation of constitutional rights, either by inadequate training or supervision." *Russo v. City of Hartford*, 341 F. Supp. 2d 85, 107 (D. Conn. 2004). "A municipal policy may be pronounced or tacit and reflected in either action or

inaction.  In the latter respect, a city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." *Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (internal quotation marks and citations omitted).

"Where a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied."  *City of Canton v. Harris*, 489 U.S. 378, 396 (1989). "[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." *Amnesty Am. v. Town of W. Hartford*, 361 F. 3d 113, 126 (2d Cir. 2004) (internal quotation marks omitted).

"As the Supreme Court has cautioned, 'deliberate indifference' is 'a stringent standard of fault' and … necessarily depends on a careful assessment of the facts at issue in a particular case" *Cash*, 654 F.3d at 334 (quoting *Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011)).  The Second Circuit has instructed that the "operative inquiry is whether those facts demonstrate that the policymaker's inaction was the result of 'conscious choice' and not 'mere negligence.'" *Id.* (citations omitted).  Deliberate indifference then "may be inferred where 'the need for more or better supervision to protect against constitutional violations was obvious,' but the policy maker 'fail[ed] to make meaningful efforts to address the

10

risk of harm to plaintiffs.'"  *Id.* (quoting *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) and *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)).  In addition, "a plaintiff must prove that "'action pursuant to official municipal policy' caused the alleged constitutional injury."  *Cash*, 654 F.3d at 333 (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011)).

A claim for failure to train "will trigger municipal liability only where the failure to train amounts to the deliberate indifference to the rights of those with whom the state officials will come into contact."  *Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998) (internal quotation marks and citation omitted).  The Second Circuit has outlined "three showings required to support a claim that a municipality's failure to train amounted to 'deliberate indifference' to the rights of citizens."  *Id.* at 903-904.  Therefore to establish a claim of inadequate training, Plaintiffs mush show that (1) "a policymaker of the municipality knows to a moral certainty that its employees will confront a given situation"; (2) that the "situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) that "the wrong choice by the employee will frequently cause the deprivation of a citizen's constitutional rights."  *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992) (citations omitted).  Therefore a municipality "cannot be liable if the need for such training was not obvious."  *Russo v. City of Hartford*, 341 F. Supp. 2d at 109 (citing *Vann*, 72 F.3d at 1049).  "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the

11

complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann*, 72 F.3d at 1049. In addition, "a pattern of misconduct, while perhaps suggestive of inadequate training, is not enough to create a triable issue of fact on a failure-to-train theory.  The plaintiff must offer evidence to support the conclusion that the training program was inadequate, not [t]hat a particular officer may be unsatisfactorily trained or that an otherwise sound program has occasionally been negligently administered, and that a hypothetically well-trained officer would have avoided the constitutional violation." *Okin v. Village of Cornwall-On-Hudson Police Dept.*, 577 F.3d 415, 440-41 (2d Cir. 2009) (internal quotation marks and citations omitted).

Here, Lewis has failed to allege facts which plausibly give rise to an entitlement to relief under *Monell*.  Lewis has conclusory alleged that Karajanis failed to supervise Bloom and Wolf and therefore has failed to state a failure to supervise claim under *Monell*.  Lewis has conclusory stated that Karajanis failed or refused to recognize the dangerous and violent propensities of Officers Bloom, Wolf, and police dog Onyx and to take corrective actions.  [Dkt. #20, SAC, Count VII, ¶158d-f].   However, Lewis has not pled any facts that prior to the police dog attack by Bloom and Onyx or the cavity search by Wolf, Karajanis was aware or should have been aware of the dangerous and violent propensities of Bloom, Wolf or Onyx.  Further, Lewis has not alleged any facts that Karajanis or other municipal actors had "actual or constructive notice" that their alleged failure to supervise was substantially certain to result in the police dog attack or the inappropriate cavity search.   Although Lewis does allege that he complained

12

about Wolf's conduct and that Karajanis and the City made no meaningful attempt to investigate his complaint, Lewis's complaint about the improper cavity search by Wolf would not put Karajanis or the City on either actual or constructive notice that a different officer would engage in an entirely different type of unconstitutional conduct.  Consequently, Lewis's complaint about Wolf did not reveal that Bloom or Onyx had dangerous and violent propensities. Lastly, Lewis has failed to allege any facts that Karajanis's or the City's conduct was the cause of his subordinates' purported unconstitutional conduct.  Lewis's conclusory allegations regarding Karajanis's failure to supervise are facts that are "merely consistent with a defendant's liability," which stops far short of "the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted).

Likewise, Lewis has failed to plausibly state a failure to train claim under *Monell*.  Lewis conclusory alleges that Karajanis failed or refused to promulgate guidelines, regulation, policies, practices or customs" regarding (i) "the arrests of person by police officers of the West Haven Police Department;" (ii) the use of force against persons by police officers of the West Haven Police Department;" (iii) "the training of Police Officer Bloom and Police Officer Wolf in the performance of their duties and conduct towards persons;" and (iv) the training of "Police Officer Bloom in the proper use, control and/or command of Onyx." [Dkt. #20, SAC, Count VII, ¶158a-c, e].  These allegations amount to naked assertions devoid of further factual enhancement that do not pass muster under *Iqbal*.  Lewis has failed to allege any facts that plausibly state that the Police

13

Department's training was inadequate.  At best, Lewis has alleged that Bloom and Wolf were unsatisfactorily trained.  However, allegations that a particular officer was unsatisfactorily trained are not sufficient to establish liability under *Monell*. *Okin*, 577 F.3d at 440-41.  Indeed, Lewis merely contends that since he was the subject of unconstitutional conduct that the City's training must therefore be deficient.   There are no allegations that the need for additional or different training was obvious.   As discussed above, although Lewis alleges he complained about Wolf's improper cavity search, his complaint would not have put Karajanis or the City on notice of the need to train about the use of police dogs.  Lewis's complaint about Wolf's improper cavity search is therefore not sufficiently related to Bloom's improper use of a police dog to demonstrate that there was an obvious need for additional or different training.  Lastly, Lewis has failed to plausibly state that Karajanis's or the City's conduct in failing to train was the cause of his subordinates' purported unconstitutional conduct. Consequently, Lewis has failed to make well-pleaded allegations which plausibly give rise to an entitlement to relief for a failure to train claim under *Monell*.

Lastly, Lewis alleges that Karajanis's and the City's failure to investigate his complaint about Wolf represented a widespread custom of ignoring citizen complaints.  [Dkt. #20, SAC, Count XIII, ¶¶20-22].  However, Lewis has failed to allege any facts demonstrating how the purported widespread custom of ignoring citizen complaints caused Wolf to subject him to an improper cavity search or Bloom to subject him to a police dog attack.  Moreover, Lewis has not alleged that the police dog attack by Bloom was made in retaliation for his complaint

about Wolf.   Lewis has not alleged that Bloom was motivated or even aware of his complaint about Wolf.   Consequently, Lewis has failed to plausibly plead that the purported custom of ignoring citizen complaints caused his constitutional injuries.   *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a chain of causation between an official policy or custom and the plaintiff's injury, *Monell* prohibits a finding of liability against a municipality.").   Lewis also conclusory alleges that after his complaint, he was subjected to harassment and excessive force by the West Haven Police Department which reflected deliberate indifference to his constitutional rights. [Dkt. #20, SAC, Count XIII, ¶¶23-24].   However, he has not identified whether this "harassment" deprived him of a constitutional right nor has he identified the other incidents of excessive force that he claims was caused by the City's custom of ignoring citizen complaints.   Such allegations are "no more than conclusions" and "are not entitled to the assumption of truth."   *Iqbal*, 129 S.Ct. at 1949-50.   For all of the above reasons, Lewis has failed to state a claim for municipal liability under *Monell*.   The Court therefore dismisses the official capacity claims against Karajanis in Count VIII and the claims against the City in Count XIII.

## II.    Count IX Claim – Negligence under Conn. Gen. Stat. §52-557n

Defendants move to dismiss Lewis's claim for negligence against the City under Conn. Gen. Stat. §52-557n on the basis that the City is not liable for conduct that involves the use of discretion or for acts or omissions which constitute criminal conduct, fraud, actual malice or wilful misconduct under Section 52-557n. [Dkt. #23, Motion to Dismiss, p. 12-15].   Defendants contend that

since the conduct alleged by Lewis either involved the use of discretion or was conduct that involved actual malice or willful misconduct, Lewis has failed to plausibly state a claim for relief under Conn. Gen. Stat. §52-557n against the City.

The Connecticut legislature codified the tort liability of municipalities in Conn. Gen. Stat. § 52–557n, which in subsection (a)(1) thereof states that "[e]xcept as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties..."  "However, Section 52–557n extends the same discretionary act immunity that applies to municipal officials to the municipalities themselves. Section 52–557n(a)(2)(B) states that municipalities will not be liable for 'negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.'" *Odom*, 772 F.Supp. at 399 (quoting Conn. Gen. Stat. § 52–557n(a)(2)(B)).   "The hallmark of a discretionary act is that it requires the exercise of judgment … In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." *Coe v. Bd. of Educ.*, 301 Conn. 112, 118 (2011) (internal quotation marks and citation omitted).

As Defendants point out, the training and supervision of police officers are considered discretionary acts under Connecticut law.  S*ee, e.g., Evoy v. City of Hartford*, No.CIVA397CV2400CFD, 2001 WL 777431, at *2 (D. Conn. June 25, 2001) ("Connecticut law provides that a municipality's acts or omissions involving the

failure to screen, hire, train, supervise, control, and discipline police officers are discretionary, governmental acts as a matter of law."); *Hughes v. City of Hartford,* 96 F.Supp.2d 114, 119 (D.Conn.2000) ("[E]xtensive and near-unanimous precedent in Connecticut clearly demonstrates that ... the failure to screen, hire, train, supervise, control and discipline [police] ... are discretionary acts as a matter of law.") (collecting cases); *Brooks v. Sweeney*, No.CV065005224, 2007 WL 1976089, at *1 (Conn. Super. Ct. June 12, 2007) ("supervision is generally considered to be a discretionary act" for purposes of 52-557n(a)(2)(B)).  Here, the alleged conduct of Karajanis in failing to supervise and train is clearly discretionary conduct under Connecticut law.  Consequently, the City is entitled to immunity as to Karajanis's alleged conduct.

Defendants argue that the acts of Bloom and Wolf in arresting and searching Lewis also constitute discretionary acts.  It is well established that the "manner in which a police officer makes an arrest fits within the framework of the day to day discretion exercised by police officers."  *Belanger v. City of Hartford*, 578 F.Supp.2d 360, 367 (D.Conn. 2008); see also *Swanson v. City of Groton*, No.X04CV030104164S, 2007 WL 4105513, at *6 (Conn. Super. Ct. Oct. 26, 2007) ("Decisions regarding the scope of an investigation whether probable cause for an arrest exists, whether information is speedy or not, whether to seek an arrest warrant or make a warrantless arrest, when and how best to pursue a wanted person, the number of police officers that are needed to conduct and complete an investigation, whether coordination with other agencies is necessary during an investigation, the search for a suspect or the pursuit of that suspect is

appropriate and the proper supervision of subordinates-all require a municipal police officer to employ wide discretion and to exercise judgment. As municipal employees engaged in discretionary functions, these defendants possess qualified governmental immunity from liability unless some recognized exception dissolves that immunity.") (citing *Tyron v. North Branford*, 58 Conn.App. 702, 708 (2000)).

Lewis concedes that the alleged conduct of Wolf, Bloom and Karajanis was discretionary but instead argues that immunity doesn't apply in the instant case because their conduct falls into the identifiable person-imminent harm exception to governmental immunity or the malicious or wanton conduct exception.   [Dkt. #24, Opp. to Motion to Dismiss, p. 8].  Indeed under Connecticut law

> there are three exceptions to discretionary act immunity. Each of these exceptions represents a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force.... First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness or intent to injure.... Second, liability may be imposed for a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws.... Third, liability may be imposed when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm.... Although the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder ... there are cases where it is apparent from the complaint.... [T]he determination of whether an act or omission is discretionary in nature and, thus, whether governmental immunity may be successfully invoked pursuant to § 52–557n (a)(2)(B), turns on the character of the act or omission complained of in the complaint."

*Mills ex rel. Mills v. The Solution, LLC*, No. 32792, 2012 WL 3822199, at *4 (Conn. App. Ct. Sept. 11, 2012) (internal quotation marks and citations omitted).

Here, Lewis has failed to allege that Karajanis's conduct in failing to train and supervise was malicious or wanton.   Moreover, the allegations do not establish that it was apparent to Karajanis that his failure to act would likely subject Lewis to imminent harm.   Therefore, Lewis's allegations as to Karajanis do not establish that any exception to discretionary act immunity should apply. However, Lewis's allegations as to Bloom and Wolf's conduct do fall within the exceptions for malicious or wanton conduct and identifiable person-imminent harm as it would be apparent to both Wolf and Bloom that their acts would subject Lewis to imminent harm.  *See Belanger*, 578 F.Supp.2d at 367 (noting that courts have "applied the identifiable person-imminent harm exception in the context of excessive force claims based on affirmative acts where the harm to the individual is so foreseeable as to create just such a duty of care" and holding that such exception applied to a police officer's conduct in striking the plaintiff in the face with a baton).

However, Section 52-557n(a)(2)(A) excludes from municipal liability  "[a]cts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct."  *Id.*  "The Connecticut Supreme Court has construed 'wilful misconduct' to be synonymous with 'intentional conduct.'" *Milardo v. City of Middletown*, No.3:06CV01071(DJS), 2009 WL 801614, at *10 (D. Conn. Mar. 25, 2009) (citing *Pane v. City of Danbury*, 267 Conn. 669, 685 (2004)). "Therefore, a municipality cannot be held liable for the intentional conduct of its employees under Conn. Gen. Stat. § 52-557n."  *Id.*   Here, Lewis admits that the alleged acts of Bloom and Wolf were intentional and malicious.  Consequently

pursuant to Section 52-557n(a)(2)(A), the City cannot be liable for either Bloom or Wolf's acts.  *See, e.g., Daniels v. City of New Haven*, No.CV010451523S, 2007 WL 1414072, at *5 (Conn. Super. Ct. April 18, 2007) (holding that under Section 52-557n(a)(2)(A), the city could not be liable for employee's alleged false imprisonment or intentional infliction of emotional distress); *Milardo*, 2009 WL 801614, at *10 (holding that city could not be liable for trespass or intentional infliction of emotional distress).  Although Bloom and Wolf's conduct do fall within the exceptions for discretionary act immunity, Section 52-557n(a)(2)(A) precludes liability against the municipality for such conduct.

Since Lewis has asserted a claim for negligence under Section 52-557n solely against the City, Section 52-557n(a)(2)(A) bars the claim as to conduct of Bloom and Wolf and discretionary act immunity applies to bar the claim as to the conduct of Karajanis pursuant to Section 52-557n(a)(2)(B).   The Court therefore dismisses Lewis's Count IX against the City in its entirety.

III.    Count XIV Claim – Indemnification under Conn. Gen. Stat. §7-465

Defendants moved to dismiss Lewis's Count XIV claim for indemnification of Wolf and Karajanis under Conn. Gen. Stat. §7-465 on the basis that Lewis has failed to alleged that he provided the statutorily required written notice of his claims against Wolf or Karajanis.   Defendants note that Lewis has alleged that he provided the required notice as to his claims against Bloom.  Section 7-465 states in relevant part:

Any town, city or borough . . . shall pay on behalf of any employee of such municipality … all sums which such employee becomes obligated to pay

by reason of liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property. . . No action for personal physical injuries or damages to real or personal property shall be maintained against such municipality and employees jointly unless such action is commenced within two years after the cause of action therefore arose and written notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained has been filed with the clerk of such municipality within six months after such cause of action of action accrued.

*Id.* Courts in Connecticut have held that an allegation of compliance with the notice provision is required under Conn. Gen. Stat. §7-465. *Adams v. Cromwell*, No.CV9605643464, 1998 WL 99284, at *2 (Conn. Super. Ct. Feb. 27, 1998) (collecting cases).

Lewis concedes that notice was not provided as to his claims against Wolf, but claims that notice was provided as to Counts I-VI against Bloom and Count VIII against Karajanis. [Dkt. #24, p.15]. Lewis requests that this Court grant leave to amend the complaint to allege that such notice was provided as to the claims against Bloom and Karajanis. *Id.* Consequently, the Court dismisses Lewis's claim for indemnification as to Wolf and grants Lewis's leave to amend his complaint to allege that he provided the required notice as to his claims against Bloom and Karajanis.

<u>Conclusion</u>

Based upon the above reasoning, Defendants' [Dkt. ## 17,23] motion to dismiss is GRANTED. The Court dismisses the claims against the City in Counts XIII and IX. The Court further dismisses the official capacity claims against Defendant Karajanis in Count VIII. The Court also dismisses Plaintiff's Count XIV

claim for indemnification as to Defendant Wolf but grants Plaintiff leave to amend his Count XIV claim as to Defendants Karajanis and Bloom.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: September 25, 2012

22